HAMILTON & YOUNG v. P. M. WILLING, ADMINISTRATOR.

No. 6041.

**1.  Consignor and Consignee.**—A consignor who under written contract sends goods to a consignee to be sold by him on commission for account of the consignor, under a stipulation that the consignor shall remain the owner, does not lose his property in the goods so long as he can trace and identify them in the factor's hands or the hands

of the factor's representative; the latter holds them only in the factor's right and not in his own independent right as purchaser or pledgee.

2. Same.—The fact that goods consigned were invoiced at a stipulated price does not of itself constitute the transaction a sale unless the terms of the consignment were such as to make the consignee, when the goods are sold, the purchaser and principal debtor for the goods.

3. Same.—In controversies between consignor and consignee and their personal representatives the intention of the parties, evidenced by their contract, must control in determining whether goods delivered were on sale or consignment.

APPEAL from Tarrant. Tried below before Hon. R. E. Beckham.

Suit by appellants alleging that appellants were a firm doing business in Dallas, Texas, and that they had theretofore between March 7, 1884, and the last of July, 1884, delivered to J. D. Parks, then at Fort Worth, but who suddenly died in the last of July, 1884, goods to the amount in value of about $2100, which Parks never returned nor accounted for; that the goods were delivered under a written contract entered into by them and Parks and signed by both parties on the 7th day of March, 1884, which stipulated that appellants were to furnish and place on commission to Parks at Forth Worth, Texas, a lot of wall paper and mixed paints, and future lots of wall paper and mixed paints, to be used and sold by Parks for their account, and that all stock in store and accounts of sales of wall paper and mixed paints should remain the property of appellants and be subject to their demand; that Parks should render an account of sales and make remittances of money arising from sales on the 1st and 15th of each month, and that the contract between them should be made void at the option of appellants and the account closed whenever appellants saw fit, and that without contention or process of law.

The petition further alleged that when Parks died, in July, 1884, he left in store at Fort Worth, Texas, about $1204 worth of the same goods obtained from appellants, and an itemized list of the goods so left by Parks was attached to appellant's petition and made a part thereof; that after the death of Parks and before the filing of the suit appellee P. M. Willing had been appointed and qualified as administrator of the estate, and that appellee had taken possession of the goods so left by Parks and set out in the itemized list, and refused to surrender them, but wrongfully detained them, and that the goods were then situated in Tarrant County; that appellants were the owners of the goods and entitled to the possession of them, and prayed for citation and for judgment for their goods, etc.

At the time of filing their petition appellants also sued out a writ of sequestration, by virtue of which the sheriff took possession of the goods, and the appellee having refused to replevy the appellants replevied and gave bond with sureties.

On March 16, 1886, appellee filed his first amended original answer, setting up:

1. A general exception.
2. A general denial.
3. A special answer setting up that there were debts against the estate owing to other parties to about $1000 and no funds to pay them with, and also alleging that appellants and Parks were partners, etc.

On March 16, 1886, appellants filed a supplemental petition consisting of, first, general exception to appellee's answer; second, special exceptions to same; and third, denial of partnership, and alleging that the goods were only consigned to Parks, and that appellants had never parted with their title to them; that when they shipped to Parks they stated the prices at which Parks would be expected to account to them for what goods he sold of theirs, and that appellants had no interest in the profits, that Parks made off the goods by selling them at a price over and above the prices at which he was to account to appellants for such as he sold, ete.

The court sustained appellants' special exceptions to appellee's special answer setting up partnership, etc., and appellee excepted.

Tried by the court without a jury and judgment for appellee against appellants and sureties on the replevy bond for the sum of $1000, the value of the goods replevied, and for costs, etc.

*Harris & Harris*, for appellants.— 1. The intention of the parties as to whether a delivery shall be a sale or a consignment governs the question as to which it is in all disputes between the parties themselves.

2. The fact that the consignee is to account to the consignor for goods at stated prices if he sells them, and the commissions or profits of the consignee are to be what he can sell them for over and above those stated prices, does not prevent it being a consignment, or in other words does not convert a consignment into a sale. J. H. Cole v. The State, 16 Texas Ct. App., 461; Brannan v. Mesick, 10 Cal., 106.

3. A reservation of title and right of possession by a consignor, or a vendor even, was sufficient in 1884 to keep the title and right of possession in the consignor or vendor, if it was the intention of the parties that the title and right of possession should be reserved. McCreary & Barlow v. Gaines, 55 Texas, 485; City Nat. Bank v. Tufts, 63 Texas, 113; Sinker, Davis & Co. v. Comparet, 62 Texas, 470; Kaufman v. Beasley, 54 Texas, 563; Griffith & Wedge v. Morrison & Mathews, 58 Texas, 51; Cobb v. Tufts, 2 W. & W. Ct. App. C. C., sec. 153.

4. An administrator stands in the same position with reference to the rights of deceased under a contract as the deceased stood while living. McClenney v. McClenney, 3 Texas, 192; Connell v. Chandler, Admr., 13 Texas, 5; Kerr v. Hutchins, 46 Texas, 384; Cobb, Admr., v. Norwood, Admr., 11 Texas, 556; Avery v. Avery, 12 Texas, 54; Seavell v. Lowery, 16 Texas, 47.

*O'Neil & Willing,* for appellee.

COLLARD, JUDGE.—The written contract between Hamilton & Young of the one part and J. D. Parks of the other is clear and unmistakable. It is an agreement that the former should furnish the latter with goods to be sold by him on commission for their account, the stock in store and accounts of sales to be the property of the consignors, subject to their demand, accounts of sales to be made and remitted for semi-monthly on the first and fifteenth of each month—these relations to cease at the option of the consignors. Parol evidence was admitted which shows that Parks was to account for the goods at the prices as billed to him and that his profit was to be the price he might sell the goods at over and above the invoice price. The business was evidently conducted under the written agreement as shown by the orders for goods by Parks, his reports, and letters making remittances. There is no evidence tending to show that the agreement was changed or that there was any partnership between the parties. Parks was evidently to sell the goods as the agent of Hamilton & Young and was responsible to them for the goods sold at the invoice price; those not sold continued to be the property of the consignors.

The administrator attempted to show on the trial that Parks was the owner of the goods; that he had bought them as an ordinary customer, and that Hamilton & Young were mere creditors of the estate for the balance due on their goods. The evidence is so clearly against this proposition that we do not hesitate to say it was not established. This was not the defense set up by the administrator in his answer. Besides the general denial he set up a partnership between Parks and Hamilton & Young, and that there were other creditors to the amount of $1000 against the partnership property.

Mr. Parsons says that "a principal does not in general lose his property in his goods as long as he can trace and indentify them in the factor's hands or into the hands of any representative of the factor, who holds them only in the factor's right, and not in his own independent right as purchaser or pledgee." 1 Pars. on Cont., *93.

This is true of ordinary consignments of goods for sale, even when the terms of the contract do not stipulate that the consignors are to continue owners of the goods.

It is said in Benjamin on Sales, American note, p. 6, that "ordinarily if goods are consigned for sale it is a bailment and not a sale to the consignee; they do not become his property, or liable to be attached by his creditors, even though consigned upon a *del credere* commission." It is difficult sometimes to determine when the contract is one of sale or consignment. The note above quoted from proceeds as follows: " The fact that the goods consigned were invoiced at a stated price does not of itself

constitute the transaction a sale unless the terms of the consignment be such as to make the consignee *when the goods are sold* the purchaser and principal debtor for the goods."

Among other authorities the annotator cites In re Linforth, 4 Sawyer, 370, which reviews other authorities upon the subject. In that case the goods were obtained from a manufacturing company by persons who afterwards became bankrupts. The suit was brought to have the court order payment " by the assignees of certain moneys being the proceeds of goods sold by the bankrupts, and also to turn over certain notes and accounts for unpaid purchase money of other goods sold by them."

The goods were obtained by the bankrupts on a written agreement that the company was to furnish Linforth, Kellogg & Co. (afterwards bankrupts) goods of their make from time to time as ordered, delivered free on the cars, at certain discounts, the purchasers to pay all freights, storage, and other charges, and to sell no other goods of the same class; to keep insured at all times for the benefit of the company; to render account of sales every three months, and to settle for all goods sold or shipped by note payable in sixty days from the dates fixed for rendering accounts of sales; to settle for goods that may be on hand at a certain date by note with interest payable in six months if required, the company to allow further discount upon cash advanced.

The court correctly held that this contract evidenced a sale on credit, and that the "petitioners could make no claim to the goods sold or removed from their warehouse by the bankrupts or to their proceeds." No question was made as to the goods remaining in the hands of the bankrupts at the time of the bankruptcy. The court held that the case of Ex Parte White, L. R. 6 Ch., 397, was almost identical with the one then under consideration. The court did not question the doctrine long established and approved in Newton v. Wheeler, "that upon bankruptcy of a factor his principal may recover of the assignee any of the goods remaining unsold, or any proceeds of such goods, which the assignees themselves may have received or which remain specifically distinguishable from the mass of the bankrupt's property." 2 Lowell, 346.

We have already pointed out the characteristic features of the contract in the case before us which distinguish it from contracts of sale and make it a contract to consign goods for sale by the agent of the consignors. The stipulation that the consignors are to remain the owners of the goods in store subject to their demand, taken in connection with other stipulations of the contract, is conclusive. The goods sued for are identified as a part of plaintiff's goods, and we are of opinion they should recover them from the administrator. Our conclusion is the judgment ought to be reversed and here rendered in favor of plaintiffs below.

*Reversed and rendered.*

Adopted April 30, 1889.