STEIN DOUBLE CUSHION TIRE CO. v. WM. T. FULTON CO. et al.

(Court of Civil Appeals of Texas. Dallas. June 28, 1913. Rehearing Denied Oct. 18, 1913.)

1. SALES (§ 8*)—CONSTRUCTION OF CONTRACT —SALE OR CONSIGNMENT.

A contract by plaintiff, a foreign corporation, to furnish defendant, a resident of the state, with rubber tires "on consignment," to be sold, and all sales settled for, any tires remaining unsold at the end of the year to be bought by the consignee, is clearly a consignment on commission rather than a sale, and constitutes the consignee the factor or agent of the manufacturer, though the tires were billed as though sold to the consignee.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 18, 19; Dec. Dig. § 8.*]

2. COMMERCE (§ 40*)—INTERSTATE COMMERCE— FOREIGN CORPORATIONS—RIGHT TO SUE.

The transaction involved interstate commerce, and the statutes requiring a foreign corporation to procure a permit to do business within the state before it may bring suit for a balance of account are not applicable.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec. Dig. § 40.*]

3. COMMERCE (§ 40*)—RESTRAINT OF TRADE— INTERSTATE COMMERCE.

The state anti-trust laws did not avoid the contract on account of a provision that the consignee would sell no other solid or cushion

tires, as the manufacture and delivery of the tires under the contract constituted an interstate commerce transaction.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec. Dig. § 40.*]

4. APPEAL AND ERROR (§ 285*)—MOTION FOR NEW TRIAL—NECESSITY.

Errors assigned in sustaining general and special demurrers to the petition need not be incorporated in a motion for new trial, particularly where the errors are fundamental.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1684–1690; Dec. Dig. § 285.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action on a bond by the Stein Double Cushion Tire Company against the William T. Fulton Company and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Robertson & Sergeant and Meador & Davis, all of Dallas, for appellant. John T. Suggs, of Denison, and G. D. Hunt and Allen & Allen, all of Dallas, for appellees.

TALBOT, J. This suit was instituted by the appellant against the appellees to recover the sum of $2,202.64, and interest. The petition, omitting formal parts, is as follows: "Now comes the Stein Double Cushion Tire Company, a corporation with its principal office at Akron, Summit county, Ohio, hereinafter called plaintiff, complaining of William T. Fulton Company, a corporation of the state of Texas, with its principal office at Dallas, Dallas county, Texas, with William T. Fulton as president of said corporation, and the Southwestern Surety Insurance Company, a corporation incorporated under the laws of Oklahoma, with its principal office at Denison, Grayson county, Texas, with W. B. Munson as president of said corporation, hereinafter styled defendants, and for cause of action plaintiff represents to the court: That heretofore, to wit, on or about the 22d day of December, 1910, plaintiff, at the instance and request of said defendant William T. Fulton Company, and in accordance with a contract with the said William T. Fulton Company, hereto attached and marked Exhibit A, and made a part hereof, sold and delivered to it certain goods, wares, and merchandise of the value of $2,202.64, the items of which and the prices therefor, as well as the dates on which the same were sold, appear from the itemized account hereto annexed and marked Exhibit B, and made a part hereof; that defendant William T. Fulton Company, in consideration that plaintiff should sell to it, agreed to furnish and deliver to the said plaintiff a good and sufficient bond issued by a surety company and to be approved by the plaintiff in the penal sum of $5,000.00, to be conditioned upon the complete performance of the contract above referred to and the payment of

any and all indebtedness and liability which the said William T. Fulton Company may owe or become liable for under said contract. Plaintiff further alleges that under the terms of said contract that on or about the 22d day of December, 1910, a bond as above referred to was furnished in accordance with the said contract by William T. Fulton Company, as principal, and the Texas Surety & Insurance Company, a corporation of the state of Texas, with its principal office at San Antonio, Texas, as surety, in the penal sum of $5,000.00, a copy of which bond is hereto attached, and made a part thereof, and marked Exhibit C; that on or prior to September 11, 1911, the defendant Southwestern Surety Insurance Company reinsured from the Texas Surety & Insurance Company, of San Antonio, Texas, the bond given by defendant William T. Fulton Company, and referred to as Exhibit C, and in consideration that plaintiff deliver to said William T. Fulton Company the goods aforesaid, in accordance with the contract marked Exhibit A, reinsured the above bond, and agreed to be answerable to the plaintiff for the payment by said William T. Fulton Company of the prices of the goods sold and delivered in accordance with said contract and the assumption by the Southwestern Surety Insurance Company of the bond marked Exhibit C; that said goods, wares, and merchandise were sold and delivered to the said William T. Fulton Company under the terms of said contract and on the faith of said guaranty of the bond hereto attached and assumed by the Southwestern Surety Insurance Company, and plaintiff duly notified the bond company of same; that, upon failure by said defendant William T. Fulton Company to fulfill the terms of said contract, plaintiff on or about September 14, 1911, notified the defendant Southwestern Surety Insurance Company that payment of amount due herein sued upon and fulfillment of the terms of said contract had been duly demanded from the said William T. Fulton Company, but had totally failed to pay the same or any part thereof, all of which the defendant Southwestern Surety Insurance Company had due notice, whereby the defendant Southwestern Surety Insurance Company had promised and became bound and liable to pay the same, but, though often requested defendants have hitherto failed and refused and still now refuse to pay the same or any part thereof, to plaintiff's damages in the sum of $2,202.64. Wherefore plaintiff prays the court that defendants be cited to appear and answer this petition and for judgment for its debt, $2,202.64, interest and costs of suit, and such other and further relief, special and general, in law and in equity that it may be justly entitled to," etc.

The contract referred to in said petition and made a part thereof, which is dated Au-

gust 1, 1910, and signed by the parties, is as follows:

"This agreement, between the Stein Double Cushion Tire Company of Akron, Ohio, herein called the party of the first part, and William T. Fulton Company, of the city of Dallas and state of Texas, herein called the party of the second part, is as follows:

"First. The first party above named, being desirous of extending its business in the state of Texas, hereby agrees to furnish the party of the second part solid and cushion rubber tires on consignment to the amount of six thousand dollars ($6,000.00), to be stored and held in the name and under the control of the party of the first part under the conditions as hereinafter set forth: Provided, however, that the financial standing of the party of the second part and his surety hereinafter mentioned and all transactions as required are at all times satisfactory to the said party of the first part.

"Second. The said party of the second part is to furnish a suitable place in the city of Dallas, Texas, for the storage of the said rubber tires, and is to keep the same insured at all times in the name of the party of the first part, said insurance to equal at least 80 per cent. of the value of the said material. Insurance policies to be sent to the party of the first part.

"Third. The party of the second part agrees to sell and ship from said stock, and shall report to the party of the first part on the 1st day of each month all sales made, together with a scale or weight inventory of the stock on hand, from said consigned stock, settlements for same to be made on the 10th of each month for all goods sold the previous month, deducting 2 per cent. as a cash discount.

"Fourth. Said first party agrees to furnish to the party of the second part first-class rubber tires of the best quality they manufacture for the prices herein mentioned, and guarantee same to be free from all defects or imperfections in material and workmanship, and to replace all tires not in accordance with its guarantee.

"Fifth. The price agreed upon for the present is as follows: No. 10½ X Round Cushion at 50 cents per pound. This price is regulated by the price of crude rubber, which in case of decline in the market it is agreed and understood that the contract price as above mentioned shall be made correspondingly lower, and, in the event of the still further advance in the price of crude rubber, the contract price will be advanced correspondingly, and this matter to be taken up by both parties hereto and adjusted satisfactorily when occasion shall require.

"Sixth. Said second party agrees that he will not sell or dispose of during the life of this agreement any other solid or cushion rubber tires other than those manufactured by the first party, and will use all reasonable efforts to introduce and promote the sale of the goods herein mentioned.

"Seventh. In order to insure the performance of this contract by the party of the second part, and the payment of any and all indebtedness and liability which the said second party may owe to or become liable for under this agreement, the party of the second part agrees to furnish and deliver to the said first party a good and sufficient bond issued by a surety company to be approved by the party of the first part in the penal sum of five thousand dollars ($5,000.00), to be conditioned as aforesaid, and, until such bond is executed, delivered, and approved as aforesaid, no part of this agreement shall take effect.

"Eighth. The said first party agrees to brand the tire with a name to be selected by the party of the second part, said brand, however, not to conflict with any other brand now in use.

"Ninth. This agreement to become operative when signed by party of the second part and countersigned by an officer of the Stein Double Cushion Tire Company, and to continue in force one year from date, subject, however, to all the conditions hereinbefore stated.

It is further agreed that at the expiration of this agreement, should there be no renewal made, that the stock of tires at that time remaining unsold is to be purchased by said William T. Fulton Company at the then prevailing price. Terms of payment to be in cash the 10th of each month for all goods sold the previous month, and the balance in full to be paid on or before twelve months from the expiration of this agreement."

There is also attached to the petition an itemized account, sworn to in accordance with the statute, of the goods alleged to have been delivered under said contract to defendant William T. Fulton Company, and a copy of the bond charged to have been executed by the defendant Southwestern Surety Insurance Company, to secure the faithful performance on the part of the said William T. Fulton Company of said contract. Both defendants filed and presented a general demurrer to plaintiff's petition, and, in addition thereto, the defendant Southwestern Surety Insurance Company specially excepted to plaintiff's petition on the grounds (1) that it shows on its face that at the time the contract sued on herein was made, and ever since that time, plaintiff was and has been a foreign corporation engaged in business in the state of Texas, and not a corporation incorporated under the laws of the state of Texas, and, further, it is not shown that at the time that said contract was made it had filed its articles of incorporation in the office of the secretary of the state of Texas, and had procured a permit to engage in business in the said state of Texas; (2) that it appears from said peti-

tion and especially from paragraph 6 of Exhibit A, attached thereto, that the contract between plaintiff and the defendant William T. Fulton Company declared on in its said petition is in contravention of the anti-trust laws of the state of Texas, and that the alleged obligation or bond entered into by the defendant William T. Fulton company, and upon which it is further alleged this defendant became surety, for the purpose of securing plaintiff in the faithful performance of the contract by the said William T. Fulton Company, are unenforceable and void. The court sustained both the general and special demurrers, and, the plaintiff declining to amend, the case was dismissed, and the plaintiff has appealed.

[1] Complaining of the court's action in sustaining appellees' demurrers, appellant contends, among other things, in effect (1) that it appears from the allegations of its petition and the contract, marked Exhibit A and made a part thereof, that the manufacture and delivery of the goods, for the value of which this suit is brought, under said contract was a consignment thereof to be sold, and not a sale, constituted an interstate commerce transaction, and therefore appellant was not required to procure a permit from the state of Texas to engage in such business; (2) that, the consignment of the goods in question being an interstate commerce transaction, the provision therein to the effect that the William T. Fulton Company would not sell or dispose of during the life of said contract any solid or cushion rubber tires other than those manufactured by appellant is not subject to the anti-trust laws of Texas.

Our conclusion is that these contentions are well taken. The contract under consideration should, in our opinion, be construed as one of consignment, and not one of sale. Such it purports to be by its very terms. It recites that the appellant, a corporation of the state of Ohio, being desirous of extending its business in the state of Texas, agrees to furnish the William T. Fulton Company, a corporation of Texas, solid and cushion rubber tires on consignment to the amount of $6,000, and obligates the latter company to store and hold such goods in its name and under its control under the conditions named in said contract, and promote the sale of said goods. It provides that the Fulton Company shall keep the goods furnished it under the agreement insured at all times in the name of appellant, the policies to be sent to appellant. It stipulates that the Fulton Company is to sell said goods, and report to appellant on the 1st day of each month all sales made, together with a scale or weight inventory of the stock in hand, from said "consigned stock," and that "settlements for same shall be made on the 10th of each month for all goods sold the previous month, deducting 2 per cent. as a cash discount." The price at the time of the making of the contract is therein agreed upon, with the further stipulation that, in case of a decline in the market, the then contract price shall be made correspondingly lower, and, in the event of an advance in the price of crude rubber, the price will be advanced correspondingly. The contract further provides that, in order to insure its performance by the Fulton Company and the payment of all indebtedness and liability which it may owe or become liable for thereunder, said company shall execute and furnish to appellant a bond in the sum of $5,000, and concludes with a stipulation that, if there is no renewal thereof at its expiration, the Fulton Company will purchase the stock of tires then on hand and unsold.

[2] These provisions of the contract, it occurs to us, clearly indicate that it was the purpose and intention of the parties thereto to constitute the Fulton Company of Texas appellant's factor or agent to sell the goods delivered to it on commission; the general property in the goods remaining in the consignor. Milburn Mfg. Co. v. Peak, 89 Tex. 209, 34 S. W. 102; Lasater v. Purcell Mill & Electric Co., 22 Tex. Civ. App. 33, 54 S. W. 425; Allen v. Tyson-Jones Buggy Co., 91 Tex. 22, 40 S. W. 393, 714. In the last case cited it is said: "The plaintiff (a foreign corporation) was not desiring to solicit business in this state, nor was it desiring to establish a general or special office in this state. The business which it transacted, as shown by the allegations, was to enter into a contract with the commission merchants to sell its buggies and phaëtons on commission. The clear inference is that these buggies and phaëtons were introduced into this state from the state of North Carolina, and so far the transaction belongs to interstate commerce, and cannot be regulated in the manner prescribed by the statute quoted. Gunn v. White Sewing Machine Co., 57 Ark. 24, [20 S. W. 591, 18 L. R. A. 206, 38 Am. St. Rep. 223]. The selling of the buggies and phaëtons, which was to be done by the commission merchants, was not a business done or carried on by the corporation. It was the business of the commission merchants themselves." The failure of the appellant's petition in the case at bar, although it appeared therefrom that it was a foreign corporation, to allege that it had filed a copy of its charter in the office of the secretary of the state of Texas, and procured a permit to do business in this state, did not render it obnoxious to either of appellees' demurrers. The clear inference from the allegations of the petition and the exhibits attached thereto, and made a part thereof, is that the transaction disclosed took place in the state of Ohio, and that the goods were shipped from that state into this state. The transaction, therefore, involved interstate commerce, and the statutes of this state re-

quiring foreign corporations to procure a permit to do business here, and depriving it of the privilege of maintaining a suit in any of the courts of this state, if it fails to do so, is not applicable. Bateman v. Milling Co., 1 Tex. Civ. App. 90, 20 S. W. 931; Lyons Thomas Hardware Co. v. Reading Hardware Co., 21 S. W. 300; Starch Co: v. Bateman, 22 S. W. 771; Brin v. Wachusetts Shirt Co., 43 S. W. 295.

The fact that the goods were billed to the Fulton Company as if sold to it, and the petition so declared, does not seriously affect the question. Hamilton et al. v. Willing, 73 Tex. 603, 11 S. W. 843. In that case it appeared that the plaintiffs, Hamilton and Young, agreed in writing to supply one Parks with goods to be sold by him on commission for their account, the stock and accounts to be the property of plaintiffs, subject to their demand, etc. According to the contract Parks ordered goods which were billed to him as if sold to him; but the evidence showed that Parks was to account for the goods at the prices as billed, his profits to be the price obtained by him in excess of the invoice price. It was held that the goods remained the property of plaintiffs, and upon the death of Parks they were entitled to rep'evy from his administrator such of the stock on hand as could be identified. In discussing the question, the court said, in effect, that the stipulation that the consignors were to remain the owners of the goods in store subject to their demands, taken in connection with other stipulations of the contract, was conclusive that said goods were shipped to and held by Parks on consignment.

Appellant further contends that, if the goods were delivered to the William T. Fulton Company under a contract of sale, and not one of consignment, still the transaction was "interstate commerce," and not subject to the laws of this state requiring a foreign corporation to obtain a permit to do the business within its borders. In support of this contention, appellant cites Miller v. Goodman, 91 Tex. 44, 40 S. W. 719; Albertype Co. v. Gust Fiest Co., 102 Tex. 219, 114 S. W. 791; Eclipse Paint & Mfg. Co. v. New Process Roofing & Supply Co., 55 Tex. Civ. App. 553, 120 S. W. 532; McCall Co. v. J. D. Stiff Dry Goods Co., 142 S. W. 659—but whether these cases are in conflict with or are distinguishable in their facts from the case of Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241, we need not stop to inquire. We hold the contract in the case at bar one of consignment, and not one of sale, and not ruled by the decision in Fuqua v. Pabst Brewing Co., supra.

[3] It also follows that, since the manufacture and delivery of the goods in question, under the contract between the appellant and the Fulton Company, constitutes an interstate commerce transaction, the same was not in violation of the anti-trust laws of this state. Albertpye Co. v. Fiest Co., supra; Eclipse Paint & Mfg. Co. v. New Process Roofing & Supply Co., supra; McCall v. Stiff Dry Goods Co., supra; Moroney Hardware Co. v. Goodwin Pottery Co., 120 S. W. 1088. In Albertpye Co. v. Fiest Co., supra, it is said: "The transaction under consideration was commerce between a citizen of New York and a citizen of Texas, whereby the former agreed to manufacture the albums in New York, and to deliver them at Galveston, Tex., therefore it was interstate commerce, which was not subject to the anti-trust laws of this state"—citing article 1, § 8, clause 4, Const. of U. S.; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Asher v. Texas, 128 U. S. 129, 9 Sup. Ct. 1, 32 L. Ed. 368.

There being nothing in appellant's petition to show that it comes within the class of foreign corporations forbidden to prosecute suits in the courts of this state, unless a permit has been procured to do business in this state, the trial court erred in sustaining appellees' demurrers, and the case will be remanded.

[4] The objections urged by the appellees to a consideration of the appellant's assignments of error are not well taken under the decision of the Supreme Court in the case of Railway Company v. Beasley, 155 S. W. 183, even though the errors complained of be not fundamental. They are, however, in our opinion fundamental, and the incorporation and presentation of them in a motion for a new trial in the court below was not necessary to entitle them to consideration on appeal. Jeff Davis et al. v. J. W. Parks et al., 157 S. W. 449 decided by this court, but not yet officially reported.

The judgment is reversed, and the cause remanded.