## Richmond.

## Pocahontas Guano Company v. Smith.

### January 24, 1918.

1. Factors and Commission Merchants—*Del Credere Factors.*—
   A *del credere* factor, like any other agent, is to sell according
   to the instructions of his principal, and to make such contracts
   as he is authorized to make for his principal; he is distin-
   guished from other agents in that he guarantees that those
   persons to whom he sells shall perform the contracts which
   he makes with them. The relation of a *del credere* agent to
   his principal is that of debtor and creditor, and he is bound
   absolutely to see that his principal is paid, and he may be sued
   in *indebitatus assumpsit* if he does not pay the sale debt when
   due. *Del credere* guaranties are held not to be within the
   statute of frauds, as being promises to answer for the debt,
   default, or miscarriage of another, but are original agreements
   of suretyship and may be proved by parol.

2. Sales—*Factors and Commission Merchants—Distinction Between
   Contract of Sale and Consignment of Goods to a Factor.*—The
   distinction between a contract of sale and a consignment of
   goods to a factor is that in the case of a sale the title passes
   to the buyer, while in the case of a consignment to a factor
   the possession passes to the factor but the title remains in
   the consignor. Where goods are delivered by one party to
   another, to sell for the party delivering them, it creates the
   relation of agency and the title remains in the principal, and
   the factor or agent is liable to pay, not a price, but to account
   for the proceeds of the goods when sold. If, however, it ap-
   pears from the whole agreement that it is the intention of the
   parties that the title to the goods is to pass to the party re-
   ceiving them, for a price to be paid by him, then the trans-
   action is a sale.

3. Sales—*Factors and Commission Merchants—Distinction Be-
   tween Contract of Sale and Consignment of Goods to a Fac-
   tor—Intention Governs.*—Where a contract contains some pro-
   visions characteristic of a sale and others characteristic of a
   consignment to a factor to determine whether it is a sale or

a consignment, there must be applied to it the familiar rules of construction, all of which are subordinate to the leading principle, that the intention of the parties must prevail, unless inconsistent with some rule of law.

4. SALES—*Factors and Commission Merchants—Distinction Between Contract of Sale and Consignment of Goods to a Factor—Case at Bar.*—In the instant case, the contract under consideration amounted merely to a consignment of fertilizers by one party to another to be sold by the latter for the benefit of the former, who has never parted with the title, and there was no element of purchase in the agreement. In such case, the relation is that of principal and factor, and not of seller and buyer. The fundamental difference between the agreement in *Arbuckle Bros.* v. *Gates,* 95 Va. 802, 30 S. E. 496, and others of that type, called "special selling factor appointment," and the agreement in the case at bar, is that in the former the consignees acquired such an interest in the property under the agreement that the title passed, and the consignor was the seller and the consignee the buyer of the property; while, in the latter case, the title remained in the consignor and only the possession of the fertilizers passed to the consignee.

Appeal from a decree of the Circuit Court of Orange county. Decree for defendant. Complainant appeals.

*Reversed.*

This controversy grows out of the construction of the following contract:

"Messrs. Swan Carpenter Co.,

"Orange, Va.

"Dear Sir:—We agree to consign to you the following named brands and quantities of fertilizers, and as much more as may be mutually satisfactory, to be sold by you as our agent, for our account, upon the terms and conditions named in this agreement; and we authorize you to sell them at such prices as to net us the amounts set opposite the brands respectively, after taking out your commission and expenses.

Statement.

|  | Ammonia. | Avail. Phos. Acid. | Potash. |  |
|---|---|---|---|---|
| Eagle Mt. Truck.....2½ | | 8 | 6 | $24.70 per ton 2000 lbs. |
| Imperial Phos...... | | 14 | | $12.20 " " " " |
| Waukesha.......... | | 16 | | $12.70 " " " " |
| Cherokee.......... | | 8 | 4 | $13.75 " " " " |
| Apex Tobacco.......3 | | .8 | 3 | $23.65 " " " " |
| Wabash............ | | 10 | 4 | $14.75 " " " " |
| Big Joe Grain Guano, 1.21 | | 9 | | $16.10 " " " " |
| Carrington Tobacco Guano...........2 | | 8 | 2 | $19.45 " " " " |

"We will ship the fertilizer in car lot and prepay freight to Orange and Rapidan.

"Fertilizers are to be stored by you in a good dry house and to be insured by you, the expense of such storage and insurance to be a part of the price you will charge the purchasers of said fertilizers over and above the net amounts to be received by us as above, and not to come out of said net amounts.

"Settlements for the fertilizers sold by you is to be made July 1, 1913.

"If sales are made on time they are to be payable Dec. 1, 1913.

"On such goods as are paid for on July 1, 1913, there is to be deducted from the net time prices seven (7) per cent discount. And you are to deliver to us or our order, when called for, all cash, notes, accounts, or other proceeds of sales of fertilizers sold, and you are besides to guarantee the payment of all sales made; also waive all homestead exemptions as to obligations under this contract.

"In the event notes should be taken from you, as a further evidence of your guaranteeing the sales made by you, said notes to be made payable at your Bank of Orange, and we are to be at liberty to use said notes and have the same

discounted and when paid by you, you will be entitled to the notes, accounts or other proceeds of sale for which they were given as the guarantee.

"We reserve the right to suspend or cancel this agreement as to any part of the fertilizers undelivered, in case of any occurrence regarded by us as unfavorable to your credit, or any unavoidable accident or occurrence, or act of any authority or authorities preventing us from delivering the fertilizers.

"It is further agreed, that in any and all sales of the above fertilizers made by you, such sales are to be made with guarantee only of the analysis on the sack, and not of the results from their use, or otherwise.

"And it is distinctly understood and agreed that all of the above fertilizers to be consigned to you as herein provided as our agent, remains our property until sold by you, and that after sale by you, the cash, notes, accounts, or other proceeds of sale are our property, and are to be accounted for by you as such and relinquish and assign to us all your interest in any lien, mortgage or account taken by you, due you for goods sold or money loaned to parties who have purchased any of the above fertilizers from you until the amount due us for said fertilizers is fully paid.

"It is further agreed that no verbal understandings with salesmen will be recognized unless expressed in this agreement.

"This contract is subject to approval of Pocahontas Guano Co.

"POCAHONTAS GUANO CO.,

"A. B. CARRINGTON, Salesman.

"A rebate of 50c. per ton allowed on alkaline and acid and $1.00 goods ammoniated in final settlement will be allowed.

41

"Pocahontas Guano Co., Lynchburg, Va.

"Gentlemen: I accept the above agreement on the terms and conditions therein stated.

"Dated Feby. 11, 1913.

"SWAN CARPENTER CO., INC.

Per S. A. CARPENTER, Sec'y & Treas."

From a decree construing the foregoing agreement to be a contract of sale, this appeal was taken.

*Shackelford & Shackelford,* for the appellant.

*Browning & Browning,* for the appellees.

WHITTLE, P., after making the above statement, delivered the opinion of the court.

The sole question on this appeal is whether the contract that we are called on to construe creates a *del credere* agency or a sale.

In approaching the consideration of this question, it will be helpful to do so in light of certain general principles of law applicable thereto.

The duties of a *del credere* factor are thus defined in 11 R. C. L., section 3, page 754:

"A *del credere* factor, like any other agent, is to sell according to the instructions of his principal, and to make such contracts as he is authorized to make for his principal; he is distinguished from other agents in that he guarantees that those persons to whom he sells shall perform the contracts which he makes with them. The relation of a *del credere* agent to his principal is that of debtor and creditor, and he is bound absolutely to see that his principal is paid, and he may be sued in *indebitatus assumpsit* if he does not pay the sale debt when due. *Del credere* guaranties are

held not to be within the statute of frauds, as being promises to answer for the debt, default, or miscarriage of another, but are original agreements of suretyship and may be proved by parol."

The learned editors of that valuable work, in section 4, at page 755, distinguish a consignment to a broker from a contract of sale as follows:

"The distinction between a contract of sale and a consignment of goods to a factor is that in the case of a sale the title passes to the buyer, while in the case of a consignment to a factor the possession passes to the factor but the title remains in the consignor. Where goods are delivered by one party to another, to sell for the party delivering them, it creates the relation of agency, and the title remains in the principal, and the factor or agent is liable to pay, not a price, but to account for the proceeds of the goods when sold. If, however, it appears from the whole agreement that it is the intention of the parties that the title to the goods is to pass to the party receiving them, for a price to be paid by him, then the transaction is a sale. Though the distinction is usually plain and simple the authorities are full of illustrations of how difficult the application may be, because the same contract contains some provisions characteristic of each. To the agreement there must be applied the familiar rules of construction, all of which are subordinate to the leading principle, that the intention of the parties must prevail, unless inconsistent with some rule of law. And this intention must be gathered not from separate clauses considered independently of others, but from all the terms of the contract considered together. A contract of sale transferring the title of the goods, and not a mere agency, is made by an agreement called 'special selling factor appointment,' under which the consignee is required to pay for the goods within sixty days, whether sold or not, at an amount fixed in advance, with certain allow-

ances for carting, storing, insuring, and selling, whether the goods are carted, stored, insured, or sold or not, without requiring the consignee to make any account of sales or to keep the proceeds thereof separate, but giving him all the advantage and risk of the advancement or decline of prices."

This clear exposition of the distinction between a consignment to a factor or broker and a contract of sale is sustained by the authorities cited in the notes, and the decision of this court in *Arbuckle Bros.* v. *Gates & Brown,* 95 Va. 802, 30 S. E. 496.

In the latter case the court held that the agreement established the relation between the parties of seller and buyer and not of consignor and consignee; and an instrument identical in all respects with the agreement in that case was similarly construed by the Supreme Court of Tennessee in *Arbuckle Bros.* v. *Kirkpatrick,* 98 Tenn. 221, 39 S. W. 3, 36 L. R. A. 285, 60 Am. St. Rep. 854; *Arbuckle Bros.* v. *Gates & Brown, supra,* is relied on by appellees as decisive of this case. It is true that the last named case and other well considered cases hold that the fact that title is retained by the consignor until the property is sold is not in itself determinative of the character of the transaction, but that the nature and legal effect of the agreement is to be ascertained from a consideration of all its stipulations, taken together, and that the intention of the parties shall prevail, unless inconsistent with some rule of law, over the mere name by which the instrument may be called, or from separate clauses thereof considered individually. *McGaw et al.* v. *Hamway,* 120 Md. 197, 87 Atl. 666; 35 Am. & Eng. Anno. Cases (1915 A), 601, and note.

In view of the foregoing principles let us endeavor, by comparison of the contract in *Arbuckle Bros.* v. *Gates & Brown, supra,* with the agreement in the instant case, to give to the latter its proper classification. The true import of the former instrument can best be determined by quoting

the language of that distinguished jurist (Judge Riely) who wrote the opinion of the court. He says: "The agreement purports, on its face, to be a 'Special Selling Factor Appointment' * * * It starts out by declaring that all goods consigned by Arbuckle Brothers to Gates & Brown * * * shall, until sold in regular course of business, remain the property of Arbuckle Brothers, with the title in them, and be merely held by Gates & Brown as their factors; and that they shall never purchase the goods for their own account. * * * That Gates & Brown shall sell and bill the goods in their own name, but only at such prices and on such terms as Arbuckle Brothers may give them from time to time. Then follows a number of stipulations that are irreconcilable with the relation of factorship, or an agency between the parties. Gates & Brown are required not only to assume all risk as to the credit of the persons to whom they may sell the goods, and to make all collections at their own expense, but they are to guarantee the sale of each 'consignment' and the payment therefor within sixty days from its date. They are required to remit the full amount of each 'consignment,' less a paltry sum designated as commissions, by the end of sixty days, whether the whole 'consignment' shall have been sold or not, and whether the proceeds of sale shall have been collected or not. They are further required to insure Arbuckle Brothers against decline in the price of unsold goods, and shall be entitled to the benefit of any advance in the price of them. No provision whatever is made for the return of any goods that may not be sold, nor for the reclamation of any moneys paid by Gates & Brown for the coffee. No account of their sales is required to be rendered to Arbuckle Brothers, and they acquire no information as to the persons to whom Gates & Brown may sell the goods; but Gates & Brown become primarily the absolute debtors of Arbuckle Brothers for the goods, whether they ever dispose of them or not. They are required to pay for them at the price fixed at the

date of each 'consignment,' at a fixed time, whether they have then sold them or not, or whether they have collected the proceeds of sale or not. * * * The agreement was an attempt to accomplish that which cannot be done: To make a sale of personal property and at the same time constitute the buyer simply an agent of the seller to hold the property until it is paid for."

Stript of the disguise of non-essential phraseology, the above transaction obviously was the equivalent of a sixty days sale by Arbuckle Brothers to Gates & Brown of all goods consigned to them at a fixed price, for which they at once became responsible, and necessarily at the same time acquired an interest in the goods amounting to title.

On the other hand, an analysis of the agreement in the case in judgment shows the existence of a *del credere* agency and not a sale. By the terms of the latter instrument, the consignors agreed to ship certain named brands and quantities of fertilizers to the consignees to be sold by the latter as their agent on their account, upon terms and conditions named in the agreement. The prices of the different brands of fertilizers were fixed by the consignors, who were to receive the net proceeds of sale after deducting expenses and the consignees' commission. Fertilizers were to be stored and insured by the consignees, these charges to be added as part of the price charged to purchasers. Settlements for fertilizers sold by the consignees were to be made by them July 1, 1913; and time sales made by the consignees were to be payable December 1, 1913. On goods paid for on July 1, 1913, there was to be deducted from the net time prices seven per cent discount. The consignees were to deliver to the consignors, or their order, when called for, all cash, notes, accounts, or other proceeds of sales of fertilizers sold; and also to guarantee the payment of all sales made; and in the event notes should be taken from the consignee as further evidence of their guaranteeing sales made by them, such notes were to be made payable at the Bank of

Orange, the consignors to be at liberty to use and have the same discounted; but when such notes were paid by the consignees, they were to be entitled to the notes, accounts or other proceeds of sale, for which they were given as a guaranty. Upon all sales of fertilizers the consignees were only to guarantee the analysis on the sack, and not results from their use. And lastly, it was agreed that all fertilizers consigned to the consignees under the agreement were to remain the property of the consignors until sold, and that after sale the cash, notes, accounts, or other proceeds of sale were consignors' property, and to be accounted for as such by consignees, who, furthermore, were to relinquish and assign to consignors all their interest in any lien, mortgage, or account taken by, or due to consignees for goods sold or money loaned to parties who had purchased any of the above fertilizers from consignees until the amount due consignors therefor was fully paid.

The fundamental difference between the agreement in the Arbuckle Brothers case and others of that type, and the agreement in this case, is that in the former the consignees acquired such an interest in the property under the agreement that the title passed, and the consignor was the seller and the consignee the buyer of the property; while, in the latter case, the title remained in the consignor and only the possession of the fertilizers passed to the consignee. There is no element of purchase in the agreement in the instant case. It amounts merely to a consignment of goods by one party to another to be sold by the latter for the benefit of the former, who has never parted with the title. In such case, the relation is that of principal and factor, and not of seller and buyer.

Our conclusion is that the title to the property did not pass from the Pocahontas Guano Co., Inc., to the Swan Carpenter Co., Inc., and therefore the decree must be reversed and the case remanded for further proceedings.

*Reversed.*