NEW HOME SEWING MACHINE CO., APPELLANT, *v.* SONGER ET AL., RESPONDENTS.

(No. 6,824.)

(Submitted November 4, 1931. Decided December 10, 1931.)

[7 Pac. (2d) 238.]

*Mr. Ralph J. Anderson,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. Raymond E. Dockery* and *Messrs. Belden & DeKalb,* for Respondents, submitted a brief; *Mr. H. Leonard DeKalb* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

This action was brought to recover the value of merchandise alleged to have been sold and delivered by plaintiff to defendants. The complaint alleges the sale and delivery of sewing machines of the agreed value of $1,360.90, demand on the part of plaintiff for payment, and the refusal of defendants to pay.

Defendants by their answer admit the demand for payment and allege that they gave the order for the sewing machines through the solicitation of one Johnson, an agent and representative of plaintiff, and that the same were sold on consignment under the "finance plan," which it is alleged is a trade name and was explained by Johnson to mean that plaintiff would send its representative to Lewistown to sell the sewing machines at retail and would bring an instructor in the art of operating the machines and furnish to each person to whom a machine was sold, seven lessons in the art of sewing with and operating the machines, all without cost to defendants, and to sell the machines on such terms and conditions as were agreeable to plaintiff; that the proceeds received from the sales were to be delivered to defendants to be remitted to plaintiff, it being understood that in most instances sales would be made upon deferred payments, and that thereafter defendants were to be under the duty of collecting the

balance remaining to be collected, from time to time, from such purchasers, and remitting such amounts to plaintiff; that the sewing machines were shipped and that Johnson negotiated sales of eleven machines, accepting old machines in part payment and also cash payments, which Johnson retained, together with all sums derived from the sale of old machines accepted as part payment on new machines, and promised the persons purchasing machines to give a certain number of lessons in the art of dressmaking, which he failed to do, and that by reason thereof defendants were unable to make collections for the machines sold by plaintiff, and the purchasers thereof demanded rescission of their contracts. It is alleged that plaintiff ratified and confirmed all and singular the terms and conditions of their agreement with Johnson, including the explanation and interpretation of the term "finance plan." Defendants offered to pay for the machines remaining in their hands and those ordered subsequent to January 21, 1927, of the value of $576.50.

Plaintiff, by reply, denies that the machines were consigned or that they were delivered in any other way than under a sale; alleges that the machines were to be paid for in cash, or under the "finance plan"; denies that it agreed to send a representative to sell the machines at retail, or to furnish an instructor to give lessons in the art of dressmaking. Plaintiff further alleges that the term "finance plan" was covered by a written offer to purchase conditional sale contracts for the machines sold, provided plaintiff was willing to accept the credit risks, but that such plan never became operative by reason of the fact that defendants never at any time, or at all, submitted any of such contracts to plaintiff, and that plaintiff never purchased any of such contracts.

Trial before the court, sitting without a jury, resulted in findings for defendants, except as to the sum of $576,50, the amount admitted by defendants to be due plaintiff. Judgment was accordingly entered, and plaintiff appeals from that portion of the judgment denying it relief for the excess of its claim over and above the sum of $576.50.

Upon the trial plaintiff introduced in evidence an order, signed by defendants, for twenty sewing machines, dated January 21, 1927, which contained the printed provision: "Terms —net 60 days 2% Cash Discount in 30 days from date of invoice, F. O. B. shipping point. If further time is desired we (or I) agree to give note or notes with accompanying order or upon receipt of invoice. $—— Due ——, with interest at 6% per annum, 60 days from date of shipment," following which is written, "Finance Plan." The order also contains this printed provision: "It is understood that no conditions agreed to by any salesman or agent and not embodied herein will be in any way binding on the New Home Sewing Machine Company, and it is understood and agreed that the New Home Sewing Machine Company shall not be in any way liable under any separate or collateral agreement made between the undersigned and its salesman."

Plaintiff also introduced in evidence a writing dated February 23, 1927, signed by Johnson as salesman for plaintiff, which recites that, "We [plaintiff] are prepared to finance your deferred payment lease contracts through the purchase from you of contracts as are acceptable," under the terms described in detail. This proposal was accepted by defendants, but the record does not show its acceptance by plaintiff, although a blank space is provided on the form for that purpose.

The evidence offered by defendants and received by the court, over plaintiff's objection, relates to an oral agreement between defendants and the salesman, Johnson, his conduct in selling the machines at retail, giving instructions in the art of dressmaking, collecting down payments, and taking old machines in exchange, which he sold retaining the proceeds, and certain correspondence between defendants and plaintiff subsequent to the various transactions, and conformed generally to the allegations of the answer.

While numerous errors are assigned as grounds for the reversal of the judgment, the determinative question is whether the court erred in permitting defendants to show by parol evidence an explanation of the term "finance plan," or, as

stated by counsel for plaintiff: "Admittedly, if this evidence on behalf of the defendants was properly admissible, it was sufficient to sustain the court's findings, and if it was improperly admitted, there was no evidence to sustain the findings of the court and judgment."

It is contended by counsel for defendants that the words "finance plan," written in the order, rendered the contract ambiguous and that parol evidence was admissible to explain what the parties understood the term to mean; while counsel for plaintiff insists that the term "has a very well defined meaning among laymen, and if you were to request any merchant or person on the street, who has had any business transactions during the past five years, what is meant by the expression 'finance plan' in a contract of this kind, he would at once inform his inquirer its meaning." In other words, counsel contends that the terms of the contract are not ambiguous, but explicit; that they interpret themselves and leave no room for the application of rules of construction or the introduction of evidence explanatory of the circumstances under which the agreement was made.

If the language of the agreement is clear, it needs no interpretation; the intention of the parties is to be ascertained from the writing alone. (*Hill Cattle Corp.* v. *Killorn,* 79 Mont. 327, 256 Pac. 497; secs. 7520, 10517, Rev. Codes 1921.) Resort may be had to parol evidence in aid of interpretation only when the contract appears on its face to be ambiguous or uncertain. (*Sutton* v. *Masterson,* 86 Mont. 530, 284 Pac. 264; secs. 7530, 7535, Id.)

While it is true that the term "finance plan" is in general use, we are not prepared to say that it has any well-defined or fixed meaning. It is a matter of common knowledge that the finance plans employed in the business world in the distribution and disposal of merchandise are varied, and that the use of the term by one concern would mean one thing, and when used by another would denote something entirely different.

The meaning of the term used is not so free from doubt that it can be said as a matter of law that it furnishes its own interpretation. That the writing does not contain all the conditions of the agreement is apparent; resort must be had to extrinsic facts for an explanation of plaintiff's finance plan. The agreement is uncertain and ambiguous, and the court ruled correctly in admitting the evidence.

But counsel for plaintiff contends that, if the writing of ■ January 21, 1927, is ambiguous, such ambiguity was removed by the proposal of February 23, 1927, which was approved by defendants. Conceding that the two instruments must be construed together, the contention cannot be sustained. The proposal which plaintiff alleges never became operative, is merely an offer by plaintiff to purchase from defendants "deferred payment lease contracts," upon the conditions set forth at length, and in our opinion affords no satisfactory explanation of the finance plan mentioned in the order of January 21, 1927.

Finally it is contended that the evidence does not show that ■ Johnson had authority to enter into the contract as testified to by defendants. Whether Johnson had authority to make the contract he did is immaterial. Since plaintiff accepted the contract containing the ambiguous terms and acted upon it by shipping the goods to defendants, it is in no position to urge that Johnson was without authority to make it. "Ratification of part of an indivisible transaction is a ratification of the whole." (Sec. 7941, Rev. Codes 1921.) "Plaintiff must either ratify this transaction in whole or reject it in whole. It must take the bad with the good; it will not be permitted to blow both hot and cold." (*United States Nat. Bank v. Chappell*, 71 Mont. 553, 230 Pac. 1084, 1088; 2 C. J. 873.) Plaintiff will be deemed to have ratified its agent's ambiguous contract and is bound by its agent's interpretation of the terms used.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, ANGSTMAN and MATTHEWS concur.

ON MOTION FOR REHEARING.

(Filed January 22, 1932.)

MR. JUSTICE FORD delivered the opinion of the court.

On petition for rehearing, counsel for plaintiff asserts that "the decision of this court decides, in effect, that if an ambiguity exists on the face of a contract, that is, if words are used which are ambiguous, the door is thrown wide open for oral testimony, and that, not only can the meaning of those words be explained, but that a collateral or independent contract may be proven, resting solely in parol, which operates to destroy the plain and unambiguous portions of the written contract." Such is not the effect of the decision.

The general rule contended for by plaintiff that "in order to let in evidence of a collateral agreement between the parties, such agreement must be consistent with the terms of the writing; if the evidence tends to vary or contradict the terms of the written agreement or to defeat its operation it cannot be received" (22 C. J. 1248), has no application to the facts presented by the record before us.

Here there was no attempt made to prove a collateral or independent contract. The court had before it a writing which did not contain all of the terms of the agreement, and, in consequence, it was required to resort to extrinsic facts for an explanation of the ambiguous phrase in order that the mutual intention of the parties, as it existed at the time of the execution of the writing, might be ascertained.

Under our statutes a contract must be so interpreted "as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Sec. 7527, Rev. Codes 1921.) "Where a contract is partly written and partly printed * * * the written parts control the printed parts. * * * And if the two are absolutely repugnant, the latter must be so far disregarded." (Sec. 7542, Id.) "The language of a contract should be interpreted most strongly against the party who

caused the uncertainty to exist." (Sec. 7545, Id.) "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (Sec. 7540, Id.) "When an instrument consists partly of written words and partly of a printed form, and the two are inconsistent, the former control the latter." (Sec. 10523, Id.) And when "the language of the instrument is not understood by the court, the evidence of persons * * * who understood the language, is admissible to declare * * * the meaning of the language." (Sec. 10524, Id.)

Under these rules of construction, the court properly received parol evidence to explain the ambiguous term employed in the writing, and there was ample evidence to sustain the conclusion that the transaction was a consignment and not a sale. The fact that the writing says, "Charge to Lewistown Electric Supply Company," is not inconsistent with a consignment. "Where the contract contains apt words both of sale and of agency, and its character therefore is ambiguous in this regard, reference may properly be had to declarations, acts and conduct of the parties, * * * to aid in the construction of the contract. * * * Where the order for goods is incomplete as a contract, and is consistent as well with the consignment as with a sale and the terms thereof may apply to either, it may be shown to have been given in response to a proposition to deliver the goods on consignment, and the consignee's subsequent acknowledgment that he received the goods on consignment for sale is admissible." (23 R. C. L., sec. 37, p. 1220. See, also, *Deburghraeve* v. *Autenrieth*, 24 Pa. Super. Ct. 267; *Pocahontas Guano Co.* v. *Smith*, 122 Va. 318, 94 S. E. 769; *Virginia-Carolina Chemical Co.* v. *Ruffin*, 126 Miss. 80, 88 South. 500; *Fulton Motor Truck Co.* v. *Gordon etc. Co.*, 105 Neb. 515, 181 N. W. 162; *Bernadette, Joseph & Co.* v. *Van Buren*, 212 App. Div. 702, 209 N. Y. Supp. 559; *Ries* v. *Pacific Fruit & Produce Co.*, 50 Idaho, 140, 294 Pac. 336; *Stein Double Cushion Tire Co.* v.

*Fulton Co.*, (Tex. Civ. App.) 159 S. W. 1013; *Hamilton* **v.** *Willing*, 73 Tex. 603, 11 S. W. 843.).

Petition for rehearing is denied.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, ANGSTMAN and MATTHEWS concur.