| 97 | 531 |
| s56NW | 932 |
| 130 | 14 |

THE ASPINWALL MANUFACTURING COMPANY v. ROBERT JOHNSON.

*Sale—Construction of contract—Principal and agent.*

Plaintiff appointed defendant its agent for the sale of its machines, to be shipped to him on his order at stated prices. Defendant agreed to pay for the machines ordered in four months, and give his notes for the same if requested. And it is held that the contract was one of purchase, and not of agency, as to the goods ordered, notwithstanding the contract contained other undertakings relating to the agency.

Error to Wexford. (Aldrich, J.) Argued October 25, 1893. Decided November 17, 1893.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*W. H. Foster,* for appellant.

*David Knox,* for plaintiff.

HOOKER, C. J. On November 15, 1890, the parties to this suit made the following agreement:

"This agreement, made and entered into this 15th day of November, 1890, by and between the Aspinwall Manufacturing Company, of Three Rivers, Michigan, of the first part, and Robert Johnson, of Cadillac, Wexford county, Michigan, of the second part, *Witnesseth,* that the said Aspinwall Manufacturing Company have this day appointed the party of the second part to act as agent for the sale of their Aspinwall potato-planter, attachments, and extras, for the season of 1891, in the following territory, and no other, to wit, Wexford and Benzie counties; and have agreed to ship him F. O. B., Three Rivers, Michigan, between the first of January and the first of July, 1891, the following potato-planters, attachments, and extras, unless prevented from so doing by accidents or causes beyond their control, to be accounted for as hereinafter provided. And the party of the second part does hereby

order the following Aspinwall potato-planters and attachments, and at prices named [here the word "Entered" in red ink appeared:] One Aspinwall potato-planter, $65;—Aspinwall potato-planter, with fertilizer attachment, $80;—Aspinwall corn-planter attachment, $10, —subject to a discount of 20 per cent., on the following terms and conditions: All invoices payable four months after May 1, 1891. The party of the second part hereby agrees to give his note for all goods shipped him by the party of the first part, when requested to by them, payable at D. A. Blodgett & Company's Bank at Cadillac, Michigan, with exchange. But in all cases the title and ownership of goods of their manufacture shall remain vested in the party of the first part until paid for. It is agreed by the said Aspinwall Manufacturing Company that when goods shipped by them to the party of the second part are paid for within 30 days after May 1, 1891, a discount of 20 and 5 per cent. will be given to the party of the second part. It is agreed by the Aspinwall Manufacturing Company to furnish all extras and repairs to the party of the second part at a discount of 20 per cent. from the retail price list, as published by the party of the first part, and all extras and repairs ordered by the party of the second part are to be paid for upon the receipt of the same. It is expressly understood that any claim for shortage or errors shall be made within 10 days after the receipt of the goods.

"The party of the first part reserves the right to revoke this contract, and to retake said goods, if at any time they feel themselves insecure, or the party of the second part shall fail to discharge any of his obligations entered into as above, or to make reasonable efforts to sell said goods throughout the territory named. No agreement, conditions, or stipulations, verbal or otherwise, save those in this contract, shall be recognized.

"[Here occurred the imprint of a hand.]     No claims for breakage shall be allowed, unless for manufacturer's defects in the material, and the party of the first part shall have the option of replacing the broken parts free at their factory, or pay for it at the original price that the same part was billed at to the party of the second part.

"[Here another device of a hand appeared.]  The party of the second part to this contract agrees not to handle or sell any other potato-planter than those manufactured by the Aspinwall Manufacturing Company.

"The party of the first part shall not be liable if, by reason of accident or any other cause, they should fail to fill all orders sent them by the party of the second part.

"This contract not to be binding and in force longer than December 1, 1891, and to be subject to the approval of this com-

pany. Prices also subject to change on notice from this company.

"In testimony whereof, we have hereunto set our hands and seals.

"ASPINWALL MANUFACTURING COMPANY,
"Per M. B. FRANCISCO. [L. S.]
"ROBERT JOHNSON. [L. S.]"

On the back is this:

"For the consideration of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, I do hereby guarantee the performance of the within agreement, and acknowledge myself bound for the faithful fulfillment of all agreements made by the said party of the second part, and hold myself personally liable for the payments of all notes and accounts made by the said party of the second part with the said party of the first part, under the within contract and agreement, entered into by the said party of the second part.

"Witness my hand and seal, this 15th day of November, 1891.
"ROBERT JOHNSON."

Filing on the back is as follows:

"Number 604. Articles of Agreement between the Aspinwall Manufacturing Company and Robert Johnson, P. O. Cadillac, County of Wexford, State of Michigan, November 15, 1890.

"Received November 17, 1890.
"ASPINWALL MANUFACTURING COMPANY."

Under this agreement the plaintiff shipped one of its potato-planters to the defendant in the spring of 1891. The defendant returned the machine to the plaintiff July 30, by rail. The following correspondence ensued:

"CADILLAC, MICHIGAN, July 30, 1891.
"ASPINWALL MANUFACTURING CO.,
"Three Rivers, Mich.

"Sirs: I have this day returned you the potato-planter which you shipped me, there being no sale for them in this section of country. The country is new, the ground full of stumps and roots to such an extent that farmers say there is no use of them.

"Yours truly,
"ROBERT JOHNSON,
"D. A. R."

"ASPINWALL MANUFACTURING COMPANY,
"THREE RIVERS, MICHIGAN, August 5, 1891.
"ROBERT JOHNSON,
"Cadillac, Mich.

"Dear Sir: We are in receipt of your favor of the 30th

ult., and are very much surprised indeed that you should return the potato-planter to us, which you will notice by referring to the contract was sold you on a straight basis, to be paid for September 1, next. We expect to comply with our part of the agreement, and know no reason why you should not do likewise, as the machine was sold to you by us in good faith. We have sold a very large number of planters throughout all sections of the country, and they have worked satisfactorily, pleasing both dealers and their customers. We await an early reply from you in reference to this matter, and remain,

"ASPINWALL MANUFACTURING COMPANY,
"WALTER ALEXANDER, Treasurer."

"THREE RIVERS, MICH., September 24, 1891.
"ROBERT JOHNSON,
"Cadillac, Mich.

"*Dear Sir:* On August 5, last, we wrote you in reference to a machine which you had returned to us here, and which we refused to receive. We have not as yet received any reply to our letter, and beg to again ask you what your intentions are in the matter. Your early attention will oblige,

"Yours very truly,
"ASPINWALL MANUFACTURING COMPANY,
"WALTER ALEXANDER, Treasurer."

Plaintiff brought an action, and recovered a judgment for the price of the machine.

The principal question is the construction of the contract. It recites that the plaintiff has appointed the defendant to act as its agent for the sale of its potato-planter, etc., during the season of 1891, in certain territory named, and that it has agreed to ship him potato-planters, etc., "to be *accounted for* as hereinafter provided." The next provision is that the defendant "*does hereby order* the following, * * * and at prices named, * * * subject to a discount of 20 per cent., on the following terms and conditions: All invoices payable four months after May 1, 1891." This is followed by an agreement by the defendant to give his note when requested, payable at a bank in Cadillac, with

exchange. The order of the goods, payable in four months after May 1, 1891, with the promise to give a note whenever requested, makes this a contract of purchase. The fact that the contract contains other undertakings does not change the character of this. The defendant secured to himself the right to sell these goods, and to purchase at certain prices. In consideration he agreed to make an effort to sell the plaintiff's machines. But it requires the defendant to become the purchaser of such goods as he orders. This was the view taken by the circuit judge.

Defendant also assigns error upon the admission of testimony to alter the terms of the contract. This becomes unimportant in view of the construction given to the contract. Notwithstanding the contention, we find the defendant alleging error upon the refusal of the court to permit him to show that the plaintiff's agent told him that this was a contract of agency, basing the right upon an alleged ambiguity in the contract. We think there is no such ambiguity as would justify the admission of such evidence.

The return of the goods was not asked, and plaintiff was justified in caring for them if it chose to receive them. The title remained in it until paid for, and the defendant chose to send them back. Nothing indicates a waiver of plaintiff's right to consider defendant its debtor. He received early notice that it declined to take back the property.

The judgment is affirmed.

The other Justices concurred.