## CORBETT v. RIDDLE.

(Circuit Court of Appeals, Fourth Circuit. November 20, 1913.)

### No. 1177.

1. BANKRUPTCY (§ 60*)—INSOLVENCY—ACTS OF BANKRUPTCY—ASSIGNMENT FOR BENEFIT OF CREDITORS.

Where the act of bankruptcy alleged was the making of a general assignment by the alleged bankrupt for the benefit of creditors, whether the bankrupt was insolvent was immaterial.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

2. BANKRUPTCY (§ 100*)—ADJUDICATION—COLLATERAL ATTACK.

A bankruptcy adjudication is a judgment in rem binding on all the world so far as it determines that the defendants therein are bankrupts, and that their property is subject to administration in bankruptcy, and cannot be collaterally attacked in proceedings by a claimant of property alleged to belong to the bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 60, 131, 141–144; Dec. Dig. § 100.*]

3. SALES (§§ 456, 474*) — CONTRACT — CONSTRUCTION — CONDITIONAL SALE OR BAILMENT.

Claimant delivered to the bankrupts a steam shovel under a written agreement, designated a lease for six months, fixing the aggregate rent at $5,600, $3,000 of which was paid in cash and the remaining $2,600 evidenced by five notes, each bearing interest, one maturing on the first of each month from September, 1912, to January, 1913, both inclusive, and provided that, if the bankrupts keep the agreement, they might within ten days after the expiration of the term purchase the shovel for $10. Before the expiration of the alleged lease, the bankrupts made an assign-

ment for the benefit of creditors, conveying the shovel with other property subject to the "claim" of claimant "for $2,600 balance of purchase money." *Held*, that such contract was a conditional sale and not a lease, and void as to creditors under the Virginia law for want of record.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1327–1331, 1391–1402; Dec. Dig. §§ 456, 474.*]

**4. SALES (§ 454*)—CONDITIONAL SALE—LEASE—CHARACTER OF PROPERTY.**

In the federal courts, whether an agreement, under which one party obtains possession from another of a chattel, and in which the latter seeks to reserve some kind of title, shall be construed as a hiring, a conditional sale, or a mortgage depends entirely on its effect and not at all on what the parties have designated it.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1324, 1325, 1333, 1334; Dec. Dig. § 454.*

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 448.]

**5. SALES (§ 465*)—CONDITIONAL SALES—NECESSITY OF RECORD.**

The Virginia law, which requires the recording of conditional sales, cannot be avoided by calling the contract a lease and providing that the purchase price shall be rent.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1353; Dec. Dig. § 465.*]

**6. SALES (§ 451*) — CONDITIONAL SALE — NECESSITY OF RECORD — WHAT LAW GOVERNS.**

Where a claimant in Pennsylvania sold a steam shovel to the bankrupts under a contract of conditional sale, and permitted them to remove the shovel to Virginia, claimant was bound by the Virginia law requiring such contracts to be recorded in order to be valid as against creditors of the buyer.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1323; Dec. Dig. § 451.*]

**7. SALES (§ 474*)—RIGHTS OF ASSIGNEE—PURCHASER FOR VALUE.**

Under the Virginia law, an assignee for creditors is a purchaser for value, within Pollard's Virginia Code 1904, § 2462, providing that unrecorded conditional sales of personal property are void as to creditors and purchasers.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1391–1402; Dec. Dig. § 474.*]

**8. BANKRUPTCY (§ 101*)—BANKRUPTCY PETITION—FILING—EFFECT—JURISDICTION OVER PROPERTY.**

The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate and property of the bankrupt is regarded as in custodia legis from the date of the filing of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 163; Dec. Dig. § 101.*]

**9. BANKRUPTCY (§ 20*)—FEDERAL COURTS—JURISDICTION—BANKRUPTCY PROCEEDINGS—COMITY.**

Where a bankruptcy court has acquired jurisdiction of the bankrupt's property by the filing of a bankruptcy petition, such jurisdiction so acquired is exclusive of the right of the state court to interfere with a portion of the property alleged to belong to the bankrupt's estate in detinue by a claimant.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. § 20.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Western District of Virginia, at Abingdon; Henry Clay McDowell, Judge.

In the matter of bankruptcy proceedings of M. H. Keefe & Son. From an order directing S. P. Riddle, trustee, to sell a certain steam shovel alleged to have been rented by James H. Corbett to the bankrupt, and which the trustee contended was in their possession under contract of sale, claimant appeals. Affirmed.

S. H. Sutherland, of Clintwood, Va. (Sutherland & Sutherland, of Clintwood, Va., on the brief), for appellant.

George E. Walker, of Charlottesville, Va. (Perkins, Perkins & Walker, of Charlottesville, Va., on the brief), for appellee.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. In the summer of 1912 the bankrupts had a contract to construct a section of a railroad in Dickenson county, in the Western district of Virginia. They needed a steam shovel. The appellant had one. He was a citizen of Pennsylvania. On June 29, 1912, he agreed to let the bankrupts take it from Pennsylvania to Virginia. This agreement was in writing. In terms it professed to be a lease of the shovel for six months. The aggregate rent was fixed at $5,600. Three thousand dollars of this was paid in cash. For the remaining $2,600, five promissory notes were given. Each of these notes bore interest. One of them matured on the 1st of each month from September, 1912, to January, 1913, both inclusive. The bankrupts, if they kept the agreement, might, within ten days after the expiration of the six months' term, buy the shovel for $10. The bankrupts were to keep it in order. Without the written consent of the appellant, they were not to remove the shovel from the vicinity to which it was to be originally shipped. If they did not buy it, they were to return it to Pennsylvania. Upon any breach of the agreement the appellant had the right to repossess himself of it. The shovel was taken to Dickenson county. On August 23, 1912, the bankrupts made an assignment for the benefit of creditors. It was duly recorded in Dickenson county. Among other property specifically conveyed by it was the shovel. The latter was assigned subject to a "claim" of the appellant "for $2,600 balance of purchase money." The assignees took possession of it. Some six weeks later, and on October 11th, the appellant for the first time recorded the so-called rental contract. On October 17th an involuntary petition for adjudication was filed against the bankrupts. On October 29th the appellant, in the circuit court for the county, instituted an action of detinue to recover the shovel. Under that writ the sheriff made a constructive seizure of it. In fact, it remained in the possession of the assignee for creditors. On November 29th the bankrupts were adjudicated such. A trustee was subsequently appointed. He duly qualified. He peaceably took possession of the shovel. By order of the court he rented it to some third parties for $5 a day. Subsequently the court ordered it sold. From this order the appeal was taken. The appellant then asked the court below to direct that the shovel be delivered to him. He said that for three reasons

there should have been no adjudication in bankruptcy. These reasons were as follows: (1) The bankrupts were not insolvent. (2) The petitioning creditors had received preferences. (3) The bankrupts had not resided or had their domicile or principal place of business in the district for the greater portion of the six months immediately preceding the filing of the petition.

[1, 2] As the act of bankruptcy alleged was the making of a general assignment for the benefit of creditors, insolvency was immaterial. Moreover, the appellant was not entitled thus collaterally to attack the adjudication on any of the grounds set up by him. It was a judgment in rem, binding against all the world, so far as it determined the defendants therein to be bankrupts, and that their property was subject to administration in bankruptcy. Manson v. Williams, 213 U. S. 455, 29 Sup. Ct. 519, 53 L. Ed. 869; Cook v. Robinson (C. C. A. 9th Cir.) 28 Am. Bankr. Rep. 182, 194 Fed. 785, 114 C. C. A. 505.

[3] The appellant contended that, even if the adjudication was valid, he was nevertheless entitled to the possession of the shovel as against the trustee in bankruptcy because the contract under which the bankrupts obtained possession of the shovel was not one of conditional sale, required by the law of Virginia to be recorded, but one of hiring, to which the recording statute had no application. By its terms the bankrupts bound themselves absolutely and in all events to pay more than 99.8 per cent. of the full value of the shovel ostensibly for its use for a period of six months, during which its deterioration in value would not have been great. More than half of this sum was to be paid in advance. For the balance they gave their negotiable interest-bearing notes. The requirement that if they should elect to purchase they should pay an additional $10 was obviously a mere form. If the notes had been paid, of course the $10 would have been. The shovel would have been worth more than that to sell as old iron. Moreover, if they did not pay the $10 they bound themselves to return the shovel to Pennsylvania. That would have cost many times $10.

With great industry and learning the counsel for the appellant has urged upon our attention many cases in which agreements, some of which it would be difficult to distinguish from this, have been held to have been bailments and not conditional sales. We deem it altogether unnecessary to review or analyze them. In Virginia the law is clearly settled. Where a somewhat similar contention to that here made was set up, the Supreme Court of Appeals said:

"It was in substance and effect a sale and must be so declared. It does not matter by what name the parties chose to designate it. That does not determine its character. The courts look beyond mere names and within to see the real nature of an agreement, and determine from all its provisions taken together, and not from the name that has been given to it by the parties or from some isolated provision, its legal character and effect." Arbuckle v. Gates, 95 Va. 802, 30 S. E. 496.

To the same effect is a decision of the highest court of West Virginia (Baldwin v. Van Wagner, 33 W. Va. 293, 10 S. E. 716).

[4] In the federal courts, whether an agreement, under which one party obtains possession from another of a chattel in which the latter seeks to reserve some kind of title, shall be construed to be a hiring,

a conditional sale, or a mortgage, depends altogether upon its effect and not at all upon what the parties call it. Hervey v. Rhode Island Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003; Herryford v. Davis, 102 U. S. 235, 26 L. Ed. 160; Chicago Railway Co. v. Merchants' Bank, 136 U. S. 268, 10 Sup. Ct. 999, 34 L. Ed. 349.

[5] The law of Virginia, which requires the recording of conditional sales, cannot be evaded by any such transparent device as that which was here employed.

[6] The contention that the contract, because made in Pennsylvania, is not subject to the recording laws of Virginia is without merit. "Whoever sends property" to another state "impliedly submits to the regulations concerning its transfer in force there, although a different rule of transfer prevails in the jurisdiction where he resides." Hervey v. Rhode Island Locomotive Works, supra.

Liability of property to be sold under execution must be determined by the law of the state where it is situated rather than by that of the state where its owner lives. Green v. Van Buskirk, 5 Wall. 307, 18 L. Ed. 599; Hervey v. R. I. Locomotive Works, supra.

[7] Under the law of Virginia (section 2462 of Pollard's Code 1904), unrecorded conditional sales of personal property are void as to creditors and purchasers. In that state an assignee for creditors is a purchaser for value. Arbuckle v. Gates, 95 Va. 802, 30 S. E. 496; National Cash Register Co. v. Burrow, 110 Va. 785, 67 S. E. 370.

As the court below expressly reserved all questions as to the disposition of the proceeds of the shovel, we refrain from intimating any opinion as to whether the appellant will or will not, in consequence of the statement in the assignment that the shovel is subject to appellant's claim for $2,600, balance of purchase money, be entitled to be paid such amount out of the sum received from its sale. If he shall be, it is not easy to see how most of the questions which have been so elaborately argued can be of any practical importance. Under any construction of the contract, the trustee would doubtless be entitled to complete the purchase or to exercise the option as one may choose. A court of bankruptcy is a court of equity and has equal abhorrence of a forfeiture.

The action in detinue was instituted after the petition in bankruptcy had been filed. It could not affect any rights. Appellant argues that the property of a bankrupt is not in the custody of the court of bankruptcy until there has been either an adjudication or a seizure, and that consequently the state court could levy upon this shovel even after the filing of the petition. In some federal jurisdictions it was at one time so held.

[8] We are not called upon to comment upon the cases further than to say that the law is now well settled that "the filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate is regarded as in custodia legis from the filing of the petition." Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 307,

32 Sup. Ct. 96, 56 L. Ed. 208; Hebert v. Crawford, 228 U. S. 204, 33 Sup. Ct. 484, 57 L. Ed. 800; Everett v. Judson, 228 U. S. 478, 33 Sup. Ct. 568, 57 L. Ed. 927; State Bank of Chicago v. Cox, 143 Fed. 91, 74 C. C. A. 285; Board of County Com'rs v. Hurley, 169 Fed. 92, 94 C. C. A. 362.

[9] For some purposes the bankruptcy jurisdiction of the federal courts is, of course, paramount to that of the state tribunals. Even, however, if it were merely concurrent in this case, the same result would follow. When in a federal court of competent jurisdiction a bill for a receiver is pending, no state court may, in a proceeding subsequently instituted, direct the seizure of any part of the property to which the bill relates. If the request for a receiver is first made in a state court, the same rule ties the hands of the federal. Farmers' Loan & Trust Co. v. Lake Street Elevated R. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667. This doctrine was applied by this court to the protection of the jurisdiction of a state court. Frazier v. Southern Loan & Trust Co., 99 Fed. 707, 40 C. C. A. 76.

The filing of a petition in bankruptcy is tantamount to a prayer that the bankrupt court will take all of the debtor's nonexempt property into its custody. The shovel in question came in fact into the possession of the trustee in bankruptcy. That possession was not wrongfully acquired. The court of bankruptcy had jurisdiction to direct its sale, and such direction under the circumstances disclosed by the record was proper.

The order appealed from will therefore be affirmed.