## GIELOW v. EASTERN SHORE SHIPBUILDING CORPORATION.

### (District Court, D. Maryland. June 7, 1919.)

1. **Bankruptcy ⊄≈184 (2)—Unrecorded contract giving title to shipbuilding material not valid against trustee.**

   The provision of an unrecorded contract that all materials for construction of the vessels contracted for should be the property of the vessel owner gives no title to materials not actually upon the boats as against the trustee in bankruptcy of the construction company, who occupies position of execution creditor.

2. **Bankruptcy ⊄≈184 (1)—Validity of contract for title not governed by laws where made.**

   The status of material for construction of vessels as between the vessel owner and the trustee in bankruptcy of the construction company is not governed by the laws of the state where the contract was made, but by the laws where the boats were being constructed.

3. **Bankruptcy ⊄≈184 (2)—Without act of Congress Fleet Corporation cannot make valid unrecorded contract giving title.**

   Even though the Emergency Fleet Corporation has the rights of a government agent, it cannot, without authority of Congress, which had not been given, make a contract for construction of vessels giving it title to material not yet on board the vessels, which would be valid against the trustee in bankruptcy of the construction company, though not recorded as required by state law.

In Equity. Suit by Henry J. Gielow against the Eastern Shore Shipbuilding Corporation. On petitions by the Erie Basin Towing & Hoisting Company and by the United States Shipping Board Emergency Fleet Corporation, claiming property in the hands of the receiver for the defendant. Petitions dismissed, except as to such materials as had been placed on board the ships under construction before the receiver was appointed.

Eli Frank, of Baltimore, Md., for receivers.

Walter H. Buck, of Baltimore, Md., for Emergency Fleet Corporation.

Crowell & Rouse, of New York City, for Erie Basin Hoisting & Towing Co.

ROSE, District Judge. The Eastern Shore Shipbuilding Corporation was put in receivers' hands in this court during March last. Sub-

---
⊄≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sequently, bankruptcy proceedings were instituted against it in New York, and it has there been adjudicated a bankrupt, and a trustee has been elected. Of these facts there is no question, although the adjudication has never been in any formal manner brought to the attention of this court. It has, however, been agreed between the parties that the issues raised by the petition of the Erie Basin Towing & Hoisting Company, hereinafter called the "Erie" and by the petition of the United States Shipping Board Emergency Fleet Corporation, hereinafter called the "Fleet Corporation," shall be dealt with as they would ·be if the proceedings were now, as they shortly will be, in bankruptcy. For brevity, the Eastern Shore Shipbuilding Corporation will be called the "bankrupt."

The bankrupt contracted to build four wooden tugs for the Erie. Three of these were unfinished at the time receivers were appointed. For their completion the bankrupt had accumulated at its yard material to which the Erie claims to be entitled under the contract, the pertinent provisions of which read as follows:

"(e) That the title in and to the said hull, together with all materials purchased or intended for use in the construction of said vessel, shall be vested in and become the property of the purchaser, subject only to lien of builder for contract value of labor and materials over and above installments paid by purchaser.

"(f) That if the builder shall fail to carry out any of the material or substantial provisions of this contract and shall continue in default for a period of 30 days after notice thereof by the purchaser and demand for performances, the purchaser shall have the power to enter and take possession of said hull and all materials in connection therewith and in a reasonable and economical and efficient manner with no unnecessary expense to the account of the builder, complete the work called for in this contract, either at the works of the builder or elsewhere, and if the purchaser shall expend less than the balance remaining of the contract price in completing this contract, he shall pay to the builder, and the builder shall receive such balance as final and complete payment, and that if the purchaser shall expend more than the balance remaining of the contract price in completing contract, the purchaser shall receive from the builder and the builder shall pay to the purchaser on demand, 'as liquidated damages, the difference between the amount expended and the remainder of the contract price.' "

[1] This contract was never recorded in Maryland, and as against the trustees in bankruptcy occupying the position of an execution creditor, title to the material not actually upon the boats remains the property of the bankrupt and passes to the trustee. In re P. J. Sullivan Co., 254 Fed. 660, — C. C. A. —.

[2] The suggestion that the status of this material is regulated by the laws of New York, in which state the contract for the building of the boats was made, cannot be sustained. Corbett v. Riddle, 209 Fed. 811, 126 C. C. A. 535. The Fleet Corporation had a contract with the bankrupt for the building by the latter of six tugs. The contract contained the following provision:

"It is agreed that title to all vessels, either completed or under construction, in so far as they shall have been inspected and approved by the owner, shall be in the United States of America, and that the title to all material for the furtherance of work under this contract, however and by whomsoever contracted for or assembled or set up in the shipyard, or used in the construction of the work under this contract, shall be in the owner at all times. Nothing

contained herein, however, shall be construed as a waiver by the owner of its right to direct the replacement of unsatisfactory workmanship and/or materials at the contractor's expense."

At the time of the bankruptcy, none of the hulls were completed. The Fleet Corporation claims the materials on the premises of the bankrupt, and says that, even if it would not be entitled to them if it were a private corporation, it is really an agency of the government, and as such is not subject to the Lien Laws of the states. The cases relied on by it have no application to the facts of the one at bar. Some of them rule that specific liens imposed by Congress to further the collection of taxes are not subject to state regulations, and others merely reaffirm the well-known principle that the sovereign is not bound by general statutes, unless the intent so to do is clear.

[3] If Congress should provide that in contracts to construct ships or buildings for the government, such provisions as those relied on by the Fleet Corporation should be inserted, it is quite possible that they would be valid and take precedence over the laws of the state; but that is a different thing from holding that a mere executive official of the United States may, at his discretion, by the terms he puts into government agreements, suspend or modify the operation of state laws.

In what has already been said, it has, for the purpose of this discussion only, been assumed that the Fleet Corporation is correct in asserting that it has all the rights of the government. It is not intended thereby to intimate any opinion one way or the other as to whether it has those rights in fact.

It follows that the petitions of both the Erie and the Fleet Corporation must be dismissed, except in so far as relates to such materials claimed by either of them, as prior to the appointment of receivers, had been placed on board the ships under construction.