*943 OPINION.
Miluiken:[1]
Since the overassessment as to the estate of Mrs. George O. Baird for the year 1922 does not result, so far as the record discloses, from the rejection of a claim in abatement, the Board is without jurisdiction as to such petitioner for said year and the petition, in so far as it involves that year, is dismissed. Cornelius Cotton Mills, 4. B. T. A. 255.
The controlling question in these proceedings is whether the agreement of November 16,1921, between Baird and the Gulf Refining Co. of Louisiana, hereinafter referred to as the Gulf Company, was a contract of mortgage or pledge, or was a contract of sale. At the outset it is proper to state what actually was done and agreed to be done under the agreement. Flannery’s assignee, Munhall, had recovered judgment against Baird for the sum of $350,000, which had to be paid before the judgment became effective. The sum of $350,-000, which the agreement recites was loaned to Baird, was in fact paid by the Gulf Company directly to Munhall and Baird was not to be personally liable for this amount or any part thereof, nor was any interest to be paid thereon. The Gulf Company was placed in possession of the lease and agreed to operate it at its own expense “ as long as oil may be produced therefrom in paying quantities.” Baird was to receive 60 per cent of the oil until he had received the sum of $325,000 or for the term of 30 months from the date of the agreement, whichever occurred first. When Baird had received oil to the extent of $325,000 or if he had not received that amount at the end of 30 months, then the Gulf Company was to recoup out of Baird’s 60 per cent of the oil the amount of $350,000 which it had paid to Munhall. When the proceeds of the said 60 per cent of the oil had produced the sum of $675,000 (the said sum being composed of $350,000 paid to Munhall and $325,000 payable to Baird) then the escrow agent was to deliver to the Gulf Company the deed of assignment which Baird had executed contemporaneously with the execution of the agreement and had then deposited in escrow. On the other hand, the Gulf Company was to own all the gas and casing-head gas produced from the lease and, further, subject to the payment of the royalty of one-eighth to the lessor and the delivery by it to Baird for three years of one twenty-fourth of all the oil produced, was to own the remaining 40 per cent of the oil. By the deed deposited in escrow, it was provided that Baird was to receive one twenty-fourth of the oil produced for the period of three years from the date of the contract and one thirty-second of the oil thereafter produced.
Was the above contract a contract of pledge with an option in the Gulf Company to purchase or was it a contract of sale?
*944 In this connection petitioners urge that parol evidence should not be admitted to vary the terms of the written agreement and, further, that the Board is bound by its recitals to the effect that the agreement was an hypothecation and that the Gulf Company had “ loaned ” to Baird the sum of $350,000. While it is true that every word of a written agreement must be given effect, we are not bound by any one separate provision or recital. The paper should be construed as a whole. The fact that a paper terms itself a mortgage, pledge or lease is not controlling when the instrument taken by its four corners discloses that it is something else. Thus, in the leading case of Heryford v. Davis, 102 U. S. 235, the court, in holding that what purported to be a lease was in fact a contract of sale, said:
What, then, is the true construction of the contract? The answer to this question is not to be found in any name which the parties may have given to the instrument, and not alone in any particular provisions it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account.
Though the contract industriously and repeatedly spoke of loaning the cars to the railroad company for hire, for four months, and delivering them for use for hire, it is manifest that no mere bailment for hire was intended. * * *
It is also pertinent to point out that we are applying a Federal income-tax act which taxes, or at least attempts to tax, alike, the income of all persons, it matters not in what particular State they reside. Cf. Burk-Waggoner Oil Association v. Hopkins, 269 U. S. 110; Weiss v. Wiener, 279 U. S. 333, and Rosenberger v. McCaughn, 25 Fed. (2d) 699.
It is clear that the agreement, although it recites that Baird “ does by these presents mortgage and hypothecate,” was not a mortgage under the laws of Louisiana, since the Gulf Company was placed in possession. See Gates v. Gaither, 46 L. Ann. 286; 15 So. 50. It is petitioner’s contention that the agreement was in the nature of that character of pledge known to the civil law as an antichresis, to secure the payment of what the agreement terms a loan by the Gulf Company to Baird of the sum of $350,000. The following provisions of Merrick’s Revised Civil Code of Louisiana are pertinent:
Aet. 3133 [3100]. The Pledge is a contract by which one debtor gives something to his creditor as a security for his debt.
*******
Aet. 3134 [3101]. Kinds of. There are two kinds of pledge: The pawn. The antichresis.
*******
Aet. 3135 [3102], Pawn; Anticheesis. A thing is said to be pawned when a movable thing is given as security; and the antichresis, when the security given consists in immovables.
[[Image here]]
*945 Abt. 3141 [3108]. Pledge fob Debt of Another. A person may give a pledge, not only for bis own debt, but for that of another also.
*******
Abt. 3152 [3119]. Actual Deliverv and Possession of Thing Pledged. It is essential to the contract of pledge that the creditor be put in possession of the thing given to him in pledge, and consequently that actual delivery of it be made to him, unless he has possession of it already by some other right.
*******
Art. 3176 [3143]. Creditor's Rights. The antichresis shall be reduced to writing
The creditor acquires by this contract the right of reaping the fruits or other revenues of the immovables to him given in pledge, on condition of deducting annually their proceeds from the interest, if any be due him, and afterwards from the principal of his debt.
⅛ * * * * ⅜ ⅜
Abt. 3177 [3144], Taxes and Repairs. The creditor is bound, unless the contrary be agreed on, to pay the taxes, as well as the annual charges of the property which have been given to him in pledge.
He is likewise bound, under penalty of damages, to provide for the keeping and useful and necessary repairs of the pledged estate, saving himself the right of levying on their fruits and revenues all the expenses respecting such charges.
⅜ ⅜ ⅜ * ⅜ * ⅜
Abt. 3178 [3145], Reclasiation by Debtor: Abandonment by Creditor. The debtor can not, before the full payment of the debt, claim the enjoyment of the immovables which he has given in pledge.
But the creditor who wishes to free himself from the obligations mentioned in the preceding articles, may always, unless he has renounced this right, compel the debtor to retake the enjoyment of his immovable.
>{« ⅜ * sje * # *
The first essential of a pledge, whether a pawn or an anti-chresis, is a debt or an obligation of someone. It may be the debt or obligation of another. Here neither Baird nor anyone else was personally liable for the repayment of the sum of $350,000 or any part thereof. Wo are asked to hold that the Gulf Company, a corporation, loaned this sum to Baird without personal liability, without any fixed date of maturity and without interest. Indeed, we may look in vain to find any provision in the agreement of November 16, 1921, whereby the Gulf Company was to be repaid the $350,000 in case oil in sufficient quantities could not be extracted to meet the advance payment to Baird of $350,000. We do not say that such an agreement would not be valid under the laws of Louisiana but we do say that this part of the transaction more nearly corresponds with the concept of an advance payment on a sale than with that of a loan. There is, however, an essential to a pledge without which a pledge can not exist, and that is the right of redemption or, as termed in the Louisiana Code, of reclamation. *946 This right is not only absent from the agreement but could not have been exercised by Baird at any time. When the sum of $675,000 had been produced from the oil, the deed held in escrow was to be delivered. We are unable to find that the agreement constituted a pledge in the nature of an antichresis.
The next question is whether the agreement between Baird and the Gulf Company was in the nature of a sublease and, if so, whether the payments received bjr Baird were in the nature of rentals. The question as to what is a sublease or an assignment of a lease under the laws of Louisiana is discussed at length in L. T. Waller et al., 16 B. T. A. 574. As pointed out in that case, an essential element of a sublease is a reversionary interest remaining in the grantor. Here no such interest was reserved to Baird. The Gulf Company was placed in possession under a contract to operate the lease so long as oil in paying quantities was produced, with the corresponding agreement on the part of Baird that the deed placed in escrow should be delivered when the sum of $675,000 had been raised from 60 per cent of the oil. No right of reentry was reserved. No penalty of forfeiture was imposed. There is nothing in the wording of the agreement which indicates that a subleasing was intended. Neither are there any provisions therein which have any relation to such tenure. Baiid’s contract was to sell “ the entirety of the said mineral lease ” and the sum of $675,000 was a part of the purchase price. Nor is our conclusion affected by the fact that, in addition to said sum of $675,000, Baird was to receive for the first 36 months one twenty-fourth of the oil, and one thirty-second thereof thereafter. He was to receive these amounts both under the agreement and under the deed. After the delivery of the deed they could not be rentals. The same is true of them before such delivery. Under both they were a part of the purchase price. The agreement, as we will now proceed to show, was in fact a contract not of subleasing or a contract to sell, but was a contract of sale.
Subject to the liability of making the deferred payments out of oil, every right of ownership was vested in the Gulf Company. It had the right of possession so long as oil was in practical existence. The Gulf Company was the owner of all gas and casing-head gas produced after the date of the agreement. It agreed to pay all taxes assessed against the lease. It paid for the use of Baird his judgment obligation to Munhall. This payment was, for income-tax purposes, in effect a payment to Baird. See Old Colony Trust Co. v. Commissioner of Internal Revenue, and United States v. Boston & Maine Railroad, both decided by the Supreme Court of the United States on June 3, 1929. This payment at once became the absolute property of Baird. For the term of 30 months from the date of *947 the agreement Baird was to receive 60 per cent of all oil produced, or until he had received the sum of $325,000, whichever event occurred first. After the happening of the event, no further jjayments were to be made to Baird out of this 60 per cent until the Gulf Company had recouped, out of the said 60 per cent of the oil, the amount paid by it to Munhall. In all events Baird, subject to certain conditions, was to receive in addition to the sum paid to Munhall, the benefit of 60 per cent of the oil until the additional sum of $325,000 was paid to him. The fact that this amount of $325,000 was to be paid out of oil does not militate against the operation of the agreement as a contract of sale. See H. C. Walker, Jr. et al., 6 B. T. A. 1142. The provisions of the agreement as to time and conditions of payment out of oil are only limitations on the method of payment of the purchase price. Looking through the form to the substance (See Western Maryland Railway Co. v. Commissioner, 33 Fed., (2d) 695, and reducing the contract to its essence, the agreement was to sell the lease for the sum of $675,000, of which $325,000 was, subject to certain conditions, payable out of oil, and the payment of the further amount of one twenty-fourth of the oil for the first 36 months and one thirty-second thereof thereafter, and when Baird had directly or indirectly received in all the sum of $675,000 the deed already executed was to be delivered by the escrow agent to the Gulf Company.
At this point it is argued that the agreement contained no express obligation on the part of the Gulf Company to accept the deed and therefore it was optional with the Gulf Company whether it would or would not purchase. This contention overlooks the fact that in the clause 2 of the agreement the Gulf Company obligated itself to operate the lease so long as oil may be produced in paying-quantities. It overlooks the further fact that the only apparent way in which the Gulf Company could terminate its liability to turn over to Baird 60 per cent of the oil and to reduce its liability to one twenty-fourth and then to one thirty-second thereof, was by the acceptance of the deed. We cannot disregard this obvious fact and hold that the Gulf Company was under no obligation to purchase. The exercise of the so-called option operated not to impose upon the Gulf Company a further obligation, but to relieve it of a greater liability. Viewed in this aspect the provision for the option was a mere form.
The making of so-called “ leases ” in which “ rentals ” were in fact payments on the purchase price, with an option at the end of the “ term ” to purchase for a small sum, is not new. Here, as above pointed out, there was in fact a relief from a large liability. The courts, looking through the form to the substance, have held *948 sucb contracts to evidence conditional sales. Thus, in Corbett v. Riddel (C. C. A.), 209 Fed. 811, the facts were that Corbett who did business in Pennsylvania “ leased ” to Keefe & Son a steam shovel and shipped it to the firm in Virginia. The “ term ” of the “ lease ” was six months and the total “ rental ” was the sum of $5,600. The firm had the right within' 10 days after the expiration of the “ term ” to purchase the shovel for the sum of $10 or else to return it to Corbett in Pennsylvania. The court disregarded the fact that the instrument termed itself a “ lease ” and the payments “ rentals ” and held that the paper evidenced a conditional sale. With respect to the optional right to purchase, the court said:
The requirement that if they should elect to purchase they should pay an additional $10 was obviously a mere form. If the notes had been paid, of course the $10 would have been. The shovel would have been worth more than that to sell as old iron. Moreover, if they did not pay the $10 they bound themselves to return the shovel to Pennsylvania. That would have cost many times $10.
In Burroughs Adding Machine Co. v. Bogdon, 9 Fed. (2d) 54, the Adding Machine Co. had “ leased ” to Munger Fish Co. an adding machine for the “ term ” of nine months, for which the Fish Company paid $75 cash and agreed to pay a monthly “ rental ” of $47.22, malting the total payments due under the “ lease ” of the sum of $499.97. The Fish Company had the right to “ purchase ” the machine for an additional amount of $47.22 over and above the cash payment and the so-called rental. The court, in holding that this was a conditional sale, said:
The final payment, which is nominally the purchase price, is so small in comparison with the entire purchase price as to leave no real choice to the “lessee”. The obvious purpose was to dispose of the machine under such conditions that when the “ lessee ” had paid the “ rental ” he could not afford to fail the relatively small final payment to obtain it. This would have been the obvious and natural, if not the inevitable, result. Evidently it was what the parties desired and intended to accomplish.-
See, also In re Sheets Printing & Mfg. Co., 136 Fed. 989.
The agreement between Baird and the Gulf Company was skillfully drawn, and its true effect is often submerged under a cloud of legal verbiage, but when we look at it as a whole, at its purposes and results, and when we consider it in connection with the provisions of the deed contemporaneously executed and placed in escrow, the fact stands out that the agreement was neither a. pledge nor a' sublease. What petitioners have realized was a capital gain arising from the conversion into cash or its equivalent of their capital asset. Old Farmers Oil Co., 12 B. T. A. 203. Under these circumstances petitioners are not entitled to the right of deduction for depletion. See H. C. Walicer, Jr. et al., supra.
*949 Petitioners contend that if we determine that the contract between Baird and the Gulf Company was a contract of sale, then they are entitled to add to the cost of the lease the sum of $350,000, which was paid to Flannery’s assignee, for the purpose of clearing the title to the lease; and that, if this is not true, then the payment was taxable income in the year 1919, when received from Flannery, and since, as contended, no part of this amount was paid to petitioners in the deal with the Gulf Company, they should not be taxed upon it a second time.
As we have shown, the payment by the Gulf Company to Flan-nery’s assignee was, for income-tax purposes, a payment to petitioners. The sale to Flannery in 1919 and its rescission in 1921 constitute a series of transactions distinct and separate from the sale to the Gulf Company in the latter year. The fact that the rescission and subsequent sale occurred in the same year does not change the situation from what it rvould have been had they occurred in separate years. It is at once evident that the payment to Flannery’s assignee constituted no part of the cost of the lease to petitioner. During the period from the date of the contract of sale to Flannery down to the effective date of the sale to the Gulf Company, Baird operated the lease and collected all the proceeds arising therefrom. It is true that in his petition in the state court he alleged that such proceeds had been credited to Flannery but he further alleged that Flannery was not entitled to such proceeds or any part thereof and such was the effect of the judgment, which contains the following:
That the resolution of the said contract hereby decreed is ordered and adjudged effective as of date of said contract, so that no right, title, claim or interest therein has ever vested in the said Flannery or his assigns.
That the plaintiff, George O. Baird, be, and he is hereby ordered to pay unto John Munhall, Jr., the vendee of the said Flannery, and substituted defendant herein, the sum of Three Hundred and Fifty Thousand ($350,000.00) Dollars, be.ng the net sum heretofore paid by the said Flannery to the said Baird, under the said contract, and that this judgment shall become operative and in full force and effect upon the restitut.on of the said sum of Three Hundred and Fifty Thousand ($350,000.00) Dollars, by its payment either to the said John Munhall, Jr., or his representatives; and that upon such payment of the sum of Three Hundred and Fifty Thousand ($350,000.00) Dollars, the said contract shall be as if it had never existed.
There is presented no question of repossession. Baird was never out of possession. The contract was rescinded as of the date of its execution. Baird was adjudged entitled to all the proceeds of the lease and, as a matter of equity, the judgment became effective only upon payment to Flannery’s assignee, but when it did become effective the contract was “as if it had never existed.” The amount due Flannery’s assignee under the judgment was precisely the net amount *950 received from Flannery. The payment represented an amount which Baird had no right to retain, since he received all the proceeds of the lease during the period. The amount refunded precisely balances the amount received. The slate was wiped clean and Baird was where he had been when the contract was made. The cost of the lease was neither enhanced nor diminished by the receipt and payment of precisely the same amount of money.
Reviewed by the Board.

Judgment will be entered for the respondent.

 This decision was prepared during Mr. Milliken’s term of office.